IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ROBERT BOUIE,
      Plaintiff,

vs.                                      Case No. 1:05cv92/MMP/EMT

JO ANNE B. BARNHART,
Commissioner of the
Social Security Administration,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (the Act) and related statutes, 42 U.S.C. § 401, *et seq.* It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commission should be affirmed.

I.      PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits under Title II of the Act (Tr. 48-49).[1] The claim was denied initially (Tr. 42-44) and on reconsideration (Tr. 46-47). On May 14, 1999, following a hearing, an administrative law judge (ALJ) found that Plaintiff was under a "disability"

_____

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on July 25, 2005 (Doc. 9).

as defined in the Act (Tr. 36-37).  On July 12, 1999, the Appeals Council, on its own motion, reviewed the ALJ's decision (Tr. 53-58).  The Appeals Council vacated the ALJ's decision and remanded the case to an ALJ on February 25, 2000, for a new hearing and to resolve specific issues (Tr. 64-68).  A new hearing was held on August 15, 2001, before a different ALJ (Tr. 513-48).  A supplemental hearing was held on August 13, 2003 (Tr. 483-512). On September 26, 2003, an ALJ found that Plaintiff was not under a "disability" as defined in the Act at any time when he met the earnings requirement of the law (Tr. 11-26).  On March 18, 2005, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 4-6).  The Appeals Council's action made the ALJ's decision the final decision of the Commissioner and, therefore, subject to review in this court.  Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998).  Plaintiff's appeal from the final decision of the Commissioner is now before this court.

II.    FINDINGS OF THE ALJ

On September 26, 2003, the ALJ made several findings relative to the issues raised in this appeal (Tr. 11-26).  The ALJ found as follows:

1)    Plaintiff meets the nondisability requirements for a period of disability and DIB set forth in Section 216(I) of the Act and is insured for benefits through December 31, 2003.[2]

2)    Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.

3)    Plaintiff has an impairment or a combination of impairments considered "severe"; however, Plaintiff's  medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4)    Plaintiff's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the ALJ's decision.

5)    Plaintiff has, generally, retained the residual functional capacity (RFC) to lift 20 pounds occasionally and 10 pounds frequently; sit for 4-6 hours in an 8-hour day; stand or walk for 2-4 hours in an 8-hour day; occasionally twist, bend, squat, kneel,

_____

[2]Thus, the time frame relevant to this appeal is August 8, 1997 (alleged onset) to December 31, 2003 (date last insured) (Tr. 486).

crouch, and crawl; constantly reach, climb, and balance; and frequently push/pull with a 10-20 pound limit.

6)      Plaintiff cannot perform his past relevant work.

7)      Plaintiff is a younger individual, has a "high school education," and has no apparent transferable skills.

8)      Plaintiff has the RFC to perform a limited range of work at the light to sedentary exertional level.

9)      Although Plaintiff's non-exertional limitations may not allow him to perform the full range of work, there are a significant number of jobs in the national economy that he could perform.

10)     Plaintiff was not under a "disability," as defined in the Act, at any time through September 26, 2003.

(Tr. 24-26).

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) (stating "[t]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied"); *see also* Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance, i.e., "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d

842 (1971) (quoting <u>Consolidated Edison Co. V. NLRB</u>, 305 U.S. 197, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); <u>Lewis</u>, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps.  The steps are:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment,

the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.      PLAINTIFF'S PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY

         A.      Personal History

Plaintiff testified at a hearing before an ALJ on April 20, 1999, in pertinent part, as follows (Tr. 549-56).  Plaintiff was forty-one years old at the time of the hearing (Tr. 552).  Plaintiff attended school through the twelfth grade (id.).  He worked as a delivery driver for Coca Cola until August 1997, when he quit working due to back problems (Tr. 552-53).

Plaintiff testified at a supplemental hearing before an ALJ on August 15, 2001 as follows (Tr. 513-548).  Plaintiff's date of birth is August 14, 1957, which made him forty-four years old at the time of the hearing (Tr. 521).  Plaintiff was married at the time and lived with his wife and two sons (Tr. 521-22).  He could read, write, and do simple math (Tr. 522).

Following high school, Plaintiff worked as a concrete finisher for several years, then quit and worked for Coca Cola for approximately four years (Tr. 528, 530).  Plaintiff then returned to work as a concrete finisher for approximately four years (Tr. 530).  In 1988, Plaintiff returned to Coca Cola, where he continued to work until August 1997, when he permanently stopped working (Tr. 533-34).

Plaintiff cannot work because he has constant pain in his hip, as well as lower back pain and swelling in his feet (Tr. 535-36).  Before he takes medication, his hip pain is a five to six on a scale of one to ten, with ten being the worst, and his back pain is a four to five (Tr. 544).  Plaintiff can sit for thirty minutes without medication and for forty-five minutes to an hour after taking medication (Tr. 539).  He can stand for forty-five minutes and walk "a couple hundred yards before it starts bothering [him] real bad" (id.).  He tries to avoid lifting, but could probably lift fifteen to twenty pounds (id.).  Plaintiff gets along with people, can understand and follow instructions, and can keep his mind on task (id.).  He spends his days "[s]itting, fooling around in the house, lying down a lot." (Tr. 540).  He lies down intermittently for a total of four to five hours a day (Tr. 544).  Plaintiff's

wife is disabled, so he cooks, cleans, and grocery shops (Tr. 541-42).  Plaintiff drives to the grocery store, the post office, and his children's school, which averages thirty miles per week (Tr. 521).

Plaintiff testified at a supplemental hearing before an ALJ on August 13, 2003 as follows (Tr. 483-500).  When Plaintiff does chores around the house, he takes frequent rest breaks due to back pain (Tr. 493-94).  His lower back pain, swelling of his feet, high blood pressure, legs, and hip prevent him from returning to work (Tr. 494).  Plaintiff can sit comfortably for approximately thirty minutes before he has to move around, and he can stand for approximately forty minutes (Tr. 496).  He can walk less than a quarter of a mile and can lift thirty to forty pounds (Tr. 497).  Plaintiff is able to get along with people, understand and follow instructions, and keep his mind on task (*id.*).


B.      Relevant Medical History[3]

Plaintiff was seen by Bette E. Boysen, M.D., from March 1996 through April 1999 for a variety of complaints, including back pain, hip pain, hypertension, and elevated liver enzymes (Tr. 221-52, 350-54).  Dr. Boysen kept Plaintiff out of work due to the back pain and referred him for physical therapy and to an orthopedist, Dr. DePaz (Tr. 221-46).  On October 23, 1997, Dr. Boysen noted that Plaintiff had seen Dr. DePaz and stated that Dr. DePaz recommended lifting no more than twenty pounds and no twisting (Tr. 228).  Dr. Boysen documented that she would defer to the functional restrictions imposed by Dr. DePaz or Dr. Petty (*id.*).  On December 11, 1997, Dr. Boysen noted that Plaintiff had been told light duty work may become available at Coca Cola and, if so, she would approve him doing light duty work (Tr. 227).  In April 1999, Plaintiff requested that Dr. Boysen complete a handicap parking permit for him; however, Dr. Boysen "was not comfortable giving him this since activity and movement [was] important for his back, hips and feet" (Tr. 351).

C.      Other Information Within Plaintiff's Claim File

Plaintiff was initially examined by Jesse A. Lipnick, M.D., on April 5, 2000 (Tr. 355-63).  Plaintiff complained of bilateral hip pain following a 1994 work-related injury in which he sustained a fracture to the left hip, eventually requiring a total left hip arthoplasty (Tr. 355).  Plaintiff also reported a previous right hip fracture, which required a pin (*id.*).  He complained of low back and

---

[3]Additional medical records are included in the transcript; however, those records are not summarized as they are not relevant to this appeal.

Case No. 1:05cv92/MMP/EMT

bilateral hip pain with any prolonged activity (*id.*).

Dr. Lipnick's diagnoses were chronic low back pain, left hip fracture with resulting avascular necrosis and eventual left total hip arthoplasty, right hip avascular necrosis with tibial bone graft, depression, and left thumb work injury in August 1997 with subsequent infection (Tr. 357).  Dr. Lipnick noted that Plaintiff had chronic pain and believed that Plaintiff's work status should be light duty with no repetitive bending, lifting, twisting, reaching, pushing or pulling; no lifting greater than ten to fifteen pounds on a repetitive basis; and frequent breaks for muscular flexibility, mobility, and pain control (*id.*).  Dr. Lipnick opined that Plaintiff would have very limited vocational options secondary to his lack of education, depression, and chronic pain (*id.*).

According to Dr. Lipnick, Plaintiff had normal upper extremities, except for his left thumb, which had a healed incision, but normal range of motion (Tr. 358).  Dr. Lipnick noted that Plaintiff had persistent muscular rigidity in the paralumbar region, but no neurologic symptoms such as sensory, motor, or reflex changes (*id.*).  Plaintiff had severe limitation in range of motion bilaterally in the hips, but his gait was functional (*id.*).  Plaintiff had intact grip strength and fine manipulation capabilities in his upper extremities (*id.*).

Also on April 5, 2000, Dr. Lipnick completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) (Tr. 359-61).  Dr. Lipnick opined that Plaintiff was able to lift and carry ten pounds frequently and was limited in pushing and pulling (Tr. 359-60).  In an eight-hour workday, Plaintiff could stand/walk about six hours and periodically alternate between standing and sitting (Tr. 359-60).  Plaintiff could never balance or crawl, but could occasionally climb, kneel, and crouch (Tr. 360).  Plaintiff had no manipulative, visual, environmental, or communicative limitations (Tr. 361).

Plaintiff was seen by Russell Clifton, Ph.D, on April 18, 2001 for a psychological evaluation upon referral from the Division of Disability Determinations (DDS) (Tr. 378-85).  Plaintiff reported that his major problem was due to left hip replacement surgery in 1996, followed by an episode of "flesh-eating bacteria" in his left hand (Tr. 378).  Plaintiff stated that following his return to work he injured his back on the job and "never recovered" (*id.*).  According to Dr. Clifton, Plaintiff "did not spontaneously mention psychological distress in the form of depression, anxiety, nor problems with substance abuse, nor cognitive problems in the form of limited intellectual functioning or

memory problems" (*id.*).

On mental status evaluation, Dr. Clifton noted that Plaintiff's manner of dress was casual, but appropriate, and his hygiene appeared good (Tr. 380).  Plaintiff walked without assistance, and his gait was slow and his posture normal (*id.*).  During the interview Plaintiff was alert, and his level of responsiveness did not show obvious disruptive effects of pain or medication (*id.*).  Plaintiff's facial expression was sad, and "[t]here were a few overt signs of distress during the interview in the form of tears" (*id.*).  Plaintiff's eye contact was variable, and his speech quality was normal in rate and fluency (*id.*).

Dr. Clifton documented that Plaintiff's mood was calm but mildly anxious (*id.*).  His affect was appropriate and congruent to the content of discussion (*id.*).  Plaintiff acknowledged current feelings of moderate depression and indicated he had experienced episodes of depression in the past six months (*id.*).  Plaintiff acknowledged experiencing sleep disturbance, fatigue, loss of interests, weight loss, feelings of worthlessness, increased irritability, withdrawal, and frequent crying spells (*id.*).

Dr. Clifton observed no signs of anxiety during the interview; however, Plaintiff mentioned moderate feelings of anxiety and reported some symptoms of anxiety in the form of a racing heart rate and tremors related to his perception of his limitations and resulting financial pressure (*id.*).  Plaintiff's thought processes were logical, relevant, and coherent (*id.*).  The content of his thinking was appropriate to the interview questions, and there was no indication of delusional thinking, common compulsions, obsessive thoughts, unusual perceptual phenomena, or persistent, irrational fears (*id.*).

Dr. Clifton documented that evaluation of Plaintiff's cognitive processes indicated that his attention and concentration skills were mildly impaired, as he recited the months of the year backwards with several errors (*id.*).  According to Dr. Clifton, Plaintiff was oriented to person, place, time and situation, and his "[I]mmediate and remote memory were intact" (Tr. 380-81).  Plaintiff's intellectual ability was estimated in the low average range (Tr. 381).

Dr. Clifton stated that during the interview Plaintiff was basically cooperative, and based on the character and coherency of Plaintiff's responses, spontaneous comments, and behavior, the information obtained during the interview was believed to be reliable (*id.*).  Plaintiff's insight into

his own psychological functioning was fair to good (*id.*).

According to Dr. Clifton, results of the evaluation indicated that Plaintiff suffered from moderate to severe psychological distress in the form of depression, anxiety, increased irritability, and interpersonal isolation and suspicion (Tr. 384).  The formal test data also suggested "he may have difficulty with attention and concentration related to his emotional turmoil" (*id.*).  Plaintiff's level of intellectual functioning and memory indicated that he would be capable of comprehending and remembering "moderately detailed instructions" (Tr. 384-85).  Dr. Clifton noted that Plaintiff's history of interpersonal relationships indicated "he had experienced no difficulty in relationships with supervisors or coworkers during his years of employment, however, the results of the [Personality Assessment Inventory] suggest he is likely to have problems in relating to others currently" (Tr. 385).

Dr. Clifton's assessment was pain disorder associated with both psychological factors and a general medical condition; dysthymic disorder; rule out bipolar disorder, manic; rule out somatization disorder; major depressive disorder without psychotic features; lumbar syndrome; status post left hip arthroscopy; moderate to severe economic and occupational stressors; problems with primary support system; and a Global Assessment of Functioning (GAF) of 52[4] at present (Tr. 385).

Dr. Clifton completed a Mental RFC Assessment in August 2001 (Tr. 437-39).  According to Dr. Clifton, Plaintiff had marked restrictions in his abilities to remember locations and work-like procedures, to carry out detailed instructions, to maintain attention and concentration for extended periods of time, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 437-38).  Additionally, Plaintiff had moderate restrictions in his abilities to understand, remember, and carry out very short and simple instructions; perform

---

[4]Global assessment of functioning is the overall level at which an individual functions including social, occupational, academic, and other areas of personal performance.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30-32 (4th ed. 1994).  It may be expressed as a numerical score. *Id.* at 32.  A score between 51 and 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning  (e.g., few friends, conflicts with peers or coworkers). *Id.*

activities within a schedule; sustain an ordinary routine without special supervision; work in coordination or proximity to others without being distracted by them; make simple work decisions; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers without distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation (Tr. 437-39). Plaintiff had mild restrictions in his abilities to maintain socially appropriate behavior, to adhere to basic standards of neatness and cleanliness, and to set realistic goals or make plans independently of others (Tr. 439).

Plaintiff was examined a second time by Dr. Lipnick, on April 25, 2001 (Tr. 386-91). Plaintiff's chief complaint was low back pain with radiation to both hips since a work injury in 1994 (Tr. 386).  Plaintiff reported that he had fallen out of a truck, injuring his back, and that he underwent total left hip arthroplasty in 1996 (*id.*).

Dr. Lipnick noted that a Functional Capacity Evaluation (FCE) dated June 4, 1998 specified that Plaintiff could work at the light physical demand level for an eight-hour day and that Plaintiff did not demonstrate any symptom exaggeration, suggesting good effort and valid results (Tr. 387).

Dr. Lipnick's diagnoses were chronic musculoskeletal low back pain, myofascial pain syndrome, bilateral vascular necrosis in the hips post left total hip arthoplasty and right strut grafting, and chronic pain (Tr. 389). According to Dr. Lipnick, Plaintiff had normal joints bilaterally in the upper and lower extremities with functional range of motion; he had findings related to chronic low and mid back pain, with no evidence of neurological injury, as he had an intact neurologic examination bilaterally in the upper and lower extremities; he had a functional gait with "good heel-toe progression, good arm swing and balance"; he had intact grip strength and fine manipulation capabilities bilaterally in the upper extremities; and he had intact motor function in the upper and lower extremities (Tr. 389).

On April 27, 2001, Dr. Lipnick completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) (Tr. 392-95).  Dr. Lipnick opined that Plaintiff was able to lift and carry less than ten pounds frequently and was limited in pushing and pulling (Tr. 392-93).  In an eight-hour workday, Plaintiff could stand/walk about two hours and sit about six hours (Tr. 392-

93).  Plaintiff could never climb, balance, or kneel and could occasionally crouch, crawl, and stoop (Tr. 393).  Plaintiff had no manipulative, visual, environmental, or communicative limitations (Tr. 394-95).

Finally, in April 2001, Plaintiff was referred by DDS to Michael Amiel, M.D., for a psychiatric evaluation (Tr. 396-404).  Plaintiff presented to the office on time, after calling the day before to confirm his appointment and obtain directions to the office (Tr. 399).  His speech was normal, his mood was "good," his affect was within normal range, his thought processes were organized, he was "able to interpret opposites and similarities," and his judgment was "fair," although his insight was described as "questionable" (Tr. 399-400).  He was alert and oriented, and he was able to count backwards from fifty by threes, making only two mistakes (Tr. 400).  Plaintiff reported having a "problem with his nerves" since 1996 and "mood disturbance[s]" since 1998, but never sought treatment (Tr. 397, 401).

Dr. Amiel concluded that Plaintiff may be "partially compromised" by his mental condition, but believed that Plaintiff was "primarily compromised" by his physical condition (Tr. 401).  He found that Plaintiff suffered from Depressive Disorder, NOS, but Plaintiff's mental limitations resulted in "no," "slight," or at most "moderate" impairments only (Tr. 401, 403-04).  Additionally, he assigned Plaintiff a GAF of 65 (Tr. 401), which indicates "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." (*see* http://dpa.state.ky.us/librarymanuals/mental/Ch22.html).

V.    DISCUSSION

Plaintiff raises one issue on appeal.  Plaintiff contends that the ALJ erred in failing to include all of Plaintiff's impairments in her hypothetical questions to the vocational expert (VE) (Doc. 16 at 21-23).  Specifically, Plaintiff contends the hypothetical questions posed by the ALJ should have included, as a result of a Pain Disorder and Major Depressive Disorder, Plaintiff's "marked inability to maintain attention and concentration for extended periods and inability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods as determined by Dr.

Clifton" (*id.* at 22). Plaintiff also contends the hypothetical questions should have included the "physical limitations stated by Dr. Boysen and Dr. Lipnick" (*id.*).

A hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985). However, the ALJ is not required to include findings in the hypothetical that the ALJ properly rejected as unsupported. McSwain v. Bowen, 814 F.2d 617, 620 n.2 (11th Cir. 1987).

In the instant case, the ALJ posed hypothetical questions to the VE which assumed an individual of Plaintiff's age, education, and work experiences (Tr. 500-09). Additionally, the ALJ incorporated into her questioning the following RFC: that Plaintiff generally retained the capacity to lift twenty pounds occasionally and ten pounds frequently; sit for four to six hours in an eight-hour workday, stand or walk for two to four hours in an eight-hour workday; occasionally twist, bend, squat, kneel, crouch, and crawl; constantly reach, climb, and balance; and frequently push/pull with a ten to twenty-pound limit (*id.*).

Thus, the ALJ did not include the mental restrictions found by one-time consulting examiner Dr. Clifton. Initially, the ALJ noted that, although Plaintiff complained of "problems with his nerves" since 1996, he never sought any type of mental health treatment (Tr. 16). However, to further develop the record, Plaintiff was referred by DDS to Dr. Clifton for a psychological evaluation (Tr. 16, 378-85).

The ALJ noted the results of Dr. Clifton's examination, including his report "that the testing revealed that [Plaintiff] functions in the low average range of verbal intellectual ability with some problems with attention and recent memory, but that he would nevertheless be capable of comprehending and remembering moderately detailed instructions" (Tr. 16). While the ALJ also noted that Dr. Clifton completed a mental RFC assessment,[5] she explained that she did not attach "much weight" to the assessment as it was not supported by Dr. Clifton's examination report, nor by Plaintiff's own testimony that he gets along with people and can comprehend and follow instructions (Tr. 16). Furthermore, the court notes that Dr. Clifton's finding that Plaintiff has a GAF

---

[5]This assessment contained the "marked" mental limitations that Plaintiff contends should have been included in the hypothetical questions (*see* Tr. 437-39).

of 52 is inconsistent with his finding that Plaintiff has "marked" mental limitations in occupational functioning (*see* n.4, *supra*).  Moreover, as noted by the ALJ, Dr. Clifton reached conclusions that were inconsistent with the opinions rendered by consultative examiner Dr. Amiel.  Specifically, the ALJ noted Dr. Amiel's conclusions that Plaintiff has only <u>moderate</u> limitations in his ability to respond appropriately to work pressures and changes in a work setting, and only <u>slight</u> limitations in his ability to interact appropriately with the public, supervisors, and coworkers (Tr. 16, 396-404).

The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.  *See* <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing <u>Bentley v. Shalala</u>, 52 F.3d 784, 787 (8th Cir. 1995)).  "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1084 (Former 5th Cir. Unit B Nov. 1981).  Additionally, a claimant's failure to seek treatment is a proper factor for the ALJ to consider.  *See* <u>Watson v. Heckler</u>, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence, it is proper for ALJ to consider use of pain killers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing).  Because the ALJ articulated sufficient reasons for discounting Dr. Clifton's opinion, and the reasons are well-supported by the record, the ALJ did not err in excluding Dr. Clifton's "marked" limitations from her hypothetical questions.

Plaintiff also contends that the ALJ's hypothetical questions should have included physical limitations stated by Dr. Boysen; however, Plaintiff does not specify what those limitations are (*see* Doc. 16 at 22).  After reviewing the records, the court finds no significant restrictions imposed by Dr. Boysen.  Indeed, Dr. Boysen documented that she would defer to the functional restrictions imposed by Dr. DePaz or Dr. Petty (Tr. 228) and stated that she would approve of Plaintiff performing light duty work (Tr. 227).  Additionally, she refused to complete a handicap parking permit for Plaintiff (Tr. 351).

Finally, Plaintiff contends that the ALJ's hypothetical questions should have included physical limitations stated by Dr. Lipnick (Tr. 16 at 22).  Again, however, Plaintiff has not specified which physical limitations he is referring to.  As discussed above, Plaintiff was evaluated by Dr. Lipnick on two occasions, once in April 2000 and once in April 2001.  Thus, Dr. Lipnick cannot be considered a treating physician, and his opinion is, therefore, not entitled to controlling weight.  *See*

20 C.F.R. § 404.1527.  Nevertheless, the functional restrictions documented by Dr. Lipnick are in large part consistent with those determined by the ALJ.  Importantly, in April 2000, Dr. Lipnick opined that Plaintiff's work status should be light duty (Tr. 357),[6] which is consistent with the RFC determined by the ALJ.  Although Dr. Lipnick went on to note that Plaintiff would have very limited vocational options secondary to his lack of education, depression, and current situation of chronic pain (Tr. 357), the question of Plaintiff's vocational options is an opinion reserved for a vocational expert, who is a specialist in vocational matters.  To the extent Plaintiff contends Dr. Lipnick's opinion implies a finding of disability, such an issue is reserved to the Commissioner, not to a physician.  *See* 20 C.F.R. §§ 404.1503, 1527(e)(2).

After Plaintiff's second evaluation, Dr. Lipnick opined that Plaintiff was limited to lifting or carrying less than ten pounds, yet Plaintiff testified in 2003 that he was capable of lifting thirty to forty pounds (Tr. 392, 497).  Despite Plaintiff's testimony, the ALJ's hypothetical questions limited Plaintiff to lifting twenty pounds occasionally and ten pounds frequently, which is consistent with Dr. Lipnick's earlier opinion that Plaintiff was capable of performing light duty work and is clearly more restrictive that Plaintiff's own estimation of his abilities.  Moreover, according to Dr. Lipnick's assessments in both 2000 and 2001, Plaintiff had normal upper and lower extremities, no neurological deficits, intact motor function, a functional gait, intact grip strength, and fine manipulation abilities (Tr. 358, 389).

Plaintiff has not pointed the court to any particular restriction imposed by Dr. Lipnick that was not included in the ALJ's hypothetical questions, and upon review of the record as whole, this court concludes that the ALJ did not err.  The RFC she determined is well-supported by the record, and her hypothetical questions included those impairments she found credible and excluded those she discredited for legally sufficient reasons.

---

[6]Light work is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995).  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this <u>11</u><sup>th</sup> day of August 2006.


**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**